**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MICHAEL HENDRIX (#B17669),      )
                                          )
              Petitioner,      )
                                          )      Case No.  13 C 0493
                v.              )
                                          )
WALTER NICHOLSON, Warden, Illinois  )
River Correctional Center,          )
                                          )
              Respondent.     )

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

On January 22, 2013, Petitioner Michael Hendrix, by counsel, filed the present petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Respondent challenges the

timeliness of Hendrix's habeas petition pursuant to 28 U.S.C. § 2244(d)(1), as well as the merits

of Hendrix's habeas claim. For the following reasons, the Court denies Hendrix's habeas

petition — as untimely and on the merits — and declines to certify any issues for appeal

pursuant to 28 U.S.C. § 2253(c)(2).

I.      **Timeliness Analysis**

      A.      **Procedural Background**

On June 17, 2002, pursuant to an oral plea agreement, Hendrix pleaded guilty to two

counts of aggravated criminal sexual abuse in the Circuit Court of Cook County, Illinois.

Pursuant to the oral plea agreement, the Circuit Court imposed two consecutive fourteen-year

terms of imprisonment. The Circuit Court, however, failed to advise Hendrix during his

sentencing hearing that his sentence would include a statutory two-year term of mandatory

supervised release ("MSR") pursuant to 730 ILCS 5/5-8-1(d). In addition, Hendrix's Order of

Commitment and Sentence did not mention his two-year MSR term.  On August 5, 2002,

Hendrix filed an untimely pro se motion to withdraw his guilty plea.  He subsequently withdrew

the motion.  On November 7, 2002, Hendrix filed a pro se notice of appeal.  In July 2003,

appointed counsel filed a motion to voluntarily dismiss the appeal that the Illinois Appellate

Court granted.

On October 5, 2005, Hendrix filed a pro se post-conviction petition pursuant to the

Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*., in the Circuit Court of Cook

County.  The post-conviction petition, as later amended by appointed counsel, alleged that the

Circuit Court's decision to add a two-year MSR term to Hendrix's sentence, without

admonishment, violated his due process rights because the term was not part of the bargain he

made with the State in exchange for his guilty plea.  *See Santobello v. New York,* 404 U.S. 257,

92 S.Ct. 495, 30 L.Ed.2d 427 (1971).  On November 5, 2010, the Circuit Court dismissed

Hendrix's post-conviction petition.

Through counsel, Hendrix appealed the dismissal of his post-conviction petition to the

Illinois Appellate Court arguing that the Circuit Court erroneously dismissed his *Santobello*

claim.  On December 28, 2011, the Illinois Appellate Court affirmed the Circuit Court's

dismissal.  *See People v. Hendrix,* No. 1-10-3569 (1st Dist. 2011) (unpublished).  Hendrix then

filed a petition for leave to appeal ("PLA") in the Supreme Court of Illinois arguing his due

process *Santobello* claim that he raised in the appellate court.  The Supreme Court of Illinois

denied Hendrix's post-conviction PLA on March 28, 2012.

On January 22, 2013, the Court received the present habeas petition brought pursuant to

28 U.S.C. § 2254(d) in which Hendrix maintains that the Circuit Court's imposition of the two-

year MSR term violated his due process rights under *Santobello*.

**B.      Antiterrorism and Effective Death Penalty Act Limitations Standard**

"AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal application for a writ of habeas corpus."  *Wall v. Kholi*, ___ U.S. ___, 131 S.Ct. 1278, 1283, 179 L.Ed. 252 (2011) (citing 28 U.S.C. § 2244(d)(1)(A)); *see also Ray v. Clements,* 700 F.3d 993, 1003 (7th Cir. 2012).  "This period runs 'from the latest of' four specified dates, including":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Wall,* 131 S.Ct. at 1283 (quoting 28 U.S.C. § 2244(d)(1)(A)-(D)); *Martin v. Bartow,* 628 F.3d 871, 873 (7th Cir. 2010) ("The statute states that the limitations period begins to run from the latest of four enumerated events.").

**C.      Analysis**

As a starting point, the Court turns to the date upon which Hendrix's judgment became final under 28 U.S.C. § 2244(d)(1)(A).  *See Gonzalez v. Thaler*, ___ U.S. ___ 132 S.Ct. 641, 653-54, 181 L.Ed.2d 619 (2012) (conviction becomes final upon expiration of time for seeking direct review).  Hendrix pleaded guilty on June 17, 2002, and although he filed an untimely motion to withdraw his guilty plea on August 5, 2002, he withdrew that motion.  As such,

Hendrix's judgment became final on July 17, 2002, which was 30 days after the Circuit Court of Cook County entered judgment on Hendrix's guilty plea and sentenced him to two consecutive fourteen-year terms of imprisonment. *See* Ill.S.Ct.R. 604(d). To clarify, under Illinois Supreme Court Rule 604(d):

> No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment. No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment.

210 Ill.2d. R. 604(d); *see also People v. Green,* 375 Ill.App.3d 1049, 1053, 314 Ill.Dec. 570, 874 N.E.2d 935 (2d Dist. 2007) ("defendant's failure to follow Rule 604(d) by [timely] moving to withdraw his guilty plea and vacate the judgment subjected him to the consequence actually specified by the rule — the loss of his right to appeal the judgment.").

Therefore, absent statutory or equitable tolling, Hendrix had until July 17, 2003 to file a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Although, the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief, *see* 28 U.S.C. § 2244(d)(2), Hendrix did not file his motion for post-conviction relief until October 24, 2005, over two years after the one-year limitations period expired. *See DeJesus v. Acevedo,* 567 F.3d 941, 943 (7th Cir. 2009) ("a state proceeding that does not begin until the federal year has expired is irrelevant").

Hendrix acknowledges that his habeas petition is untimely, but argues that the statutory tolling provision pursuant to 28 U.S.C. § 2244(d)(1)(D) applies. More specifically, Hendrix maintains that the one-year limitations period was triggered "on the date on which the factual

predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *see also Escamilla v. Jungwirth,* 426 F.3d 868, 870 (7th Cir. 2005). In particular, Hendrix contends that he first found out that he would be required to serve a term of MSR sometime after August 24, 2005 when an inmate told him that all prisoners were required to serve a period of MSR when they were released. Hendrix explains that he did not discover the MSR component of his sentence earlier because it was not part of his oral plea agreement, was not mentioned at his sentencing, and was not in his Order of Sentence and Commitment. Further, Hendrix contends that once he found out about his two-year MSR term, he acted with reasonable diligence by filing an Illinois post-conviction petition on October 5, 2005.

Nonetheless, there is nothing in the record indicating that Hendrix exercised reasonable diligence to discover the factual predicate of his habeas claim, namely, that he was sentenced to a two-year MSR term in addition to his two consecutive 14-year terms of imprisonment. Instead, Hendrix explains that in August 2005 he learned from another inmate that all prisoners were required to serve a period of MSR. As the Seventh Circuit instructs, "the time commences when the factual predicate 'could have been discovered through the exercise of due diligence', not when it was *actually discovered* by a given prisoner." *Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir. 2000) (emphasis added); *see also Escamilla,* 426 F.3d at 871. Moreover, Hendrix argues that he acted with reasonable diligence because after he found out that he would be required to serve a period of MSR, he consulted legal counsel and learned that the addition of the MSR term may be in violation of his due process rights. The recognition of the factual predicate's legal significance, however, does not trigger the statutory tolling provision pursuant to Section

5

2244(d)(1)(D).  *See Owens,* 235 F.3d at 359.

In addition, although the Circuit Court failed to admonish Hendrix that he would serve a

two-year term of MSR in addition to his two consecutive fourteen-year terms, terms of MSR are

always part of a sentence by operation of Illinois law pursuant to 730 ILCS 5/5-8-1(d) for

defendants sentenced on or after February 1, 1978.  *See People v. Lopez,* 2013 IL App (2d)

110928-U, 2013 WL 1141220, at *2 (2d Dist. Mar. 19, 2013) (unpublished) ("by legislative fiat,

MSR became a term of a defendant's sentence and a part of the court record when a sentence of

imprisonment was imposed.").  Moreover, 730 ILCS 5/5-8-1(d) was the law when the Circuit

Court sentenced Hendrix, and therefore, he is charged with full knowledge of it.  *See People v.*

*Evans,* ___ N.E.2d ___, 2013 WL 652749, at *4 (Ill. Feb. 22, 2013) ("section 5-8-1(d)(1) was, is,

and remains the law, and [defendant] therefore is charged with full knowledge of it.").  As such,

Hendrix's statutory tolling argument fails, and his habeas petition is untimely.  Nevertheless, for

the sake of completeness, the Court turns to the merits of his habeas claim.

## II.      Merits Determination

### A.      Habeas Standard

Under AEDPA, a court cannot grant habeas relief unless the state court's decision was

contrary to, or an unreasonable application of federal law clearly established by the Supreme

Court.  *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000);

*Resendez v. Smith,* 692 F.3d 623, 626 (7th Cir. 2012).  In *Williams*, the Supreme Court explained

that a state court's decision is "contrary to" clearly established Supreme Court law "if the state

court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if

the state court confronts facts that are materially indistinguishable from a relevant Supreme

Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407; *Coleman v. Hardy,* 690 F.3d 811, 814 (7th Cir. 2012). "The state court's application of federal law must not only be incorrect, but 'objectively unreasonable.'" *Rann v. Atchison,* 689 F.3d 832, 835 (7th Cir. 2012); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Carter v. Thomspon,* 690 F.3d 837, 843 (7th Cir. 2012) (citation omitted).

### B.   Merits Analysis

Relying on *Santobello*, Hendrix maintains that the "imposition of the mandatory supervised release term result[ed] in a breach of his plea agreement, in violation of his constitutional right to due process." (R. 1, Habeas Pet., at 11.) Hendrix cites the following *Santobello* language in support of his claim — "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. As the Seventh Circuit explains, *Santobello* "stands for the general proposition that the government must keep its end of a plea bargain." *Gills v. Grams,* 351 Fed.Appx. 111, 115 (7th Cir. 2009) (unpublished). In short, *Santobello* speaks to the government's breach of a plea agreement. *See United States v. Salazar,* 453 F.3d 911, 914 (7th Cir. 2006) ("It is well settled that the government must fulfill any

promises it makes in exchange for a defendant's guilty plea.").

Hendrix's habeas claim, however, is not that the State breached his plea agreement. Instead, he argues that the Circuit Court's imposition of the MSR term breached his plea agreement. The Supreme Court in *Santobello* did not hold that a trial court's breach of a plea agreement violates due process nor does Hendrix point to any clearly established Supreme Court case law supporting any such claim. *See Thaler v. Haynes,* ___ U.S. ___, 130 S.Ct. 1171, 1173, 175 L.Ed.2d 1003 (2010) ("A legal principle is "clearly established" within the meaning of [28 U.S.C. 2254(d)(1)] only when it is embodied in a holding of this Court."); *Bland v. Hardy*, 672 F.3d 445, 448 (7th Cir. 2012) ("Until the Supreme Court has made a right concrete, it has not been 'clearly established.'"). The Court further notes that "[p]lea agreements are contracts between the State and the defendant, and the circuit court is not a party to the agreement." *People v. Lenoir*, ___ N.E.2d ___, 2013 WL 1290226, at *4 (1st Dist. Mar. 29, 2013). Indeed, at Hendrix's change of plea hearing, the Circuit Court made clear that Hendrix's plea agreement was with the State, and not the court. (*See* Ex. J, Def.'s Plea, at A-3.) Therefore, any claim that the trial court breached the plea agreement is untenable under the circumstances.

Finally, to the extent that Hendrix is arguing that the Circuit Court's failure to admonish him about his two-year MSR term violates his due process rights, the Seventh Circuit has held "[t]here is no Supreme Court precedent for the proposition that a defendant must be advised of a term of MSR at the time he attempts to enter a plea of guilty. Quite the contrary, the Court has expressly declined to decide such an issue in the very similar context of parole." *Lockhart v. Chandler,* 446 F.3d 721, 724 (7th Cir. 2006). Because there is no clearly established Supreme Court precedent supporting Hendrix's habeas claim, the Court denies Hendrix's habeas petition.

**III.     Certificate of Appealability**

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254

Proceedings, the "district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant." Accordingly, the Court must determine whether to grant

Hendrix a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order. *See*

*Gonzalez,* 132 S.Ct. at 649 n.5.

A habeas petitioner does not have the absolute right to appeal a district court's denial of

his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v.*

*Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Lavin v. Rednour,* 641

F.3d 830, 832 (7th Cir. 2011). A habeas petitioner is entitled to a certificate of appealability

only if he can make a substantial showing of the denial of a constitutional right. *Miller-El,* 537

U.S. at 336; *Resendez v. Knight,* 653 F.3d 445, 446 (7th Cir. 2011). Under this standard,

Hendrix must demonstrate that "reasonable jurists could debate whether (or, for that matter,

agree that) the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at

336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

As the Seventh Circuit has repeatedly held "[w]hether a given petition is timely is a

question under § 2244, not under the Constitution, and therefore an error in treating a collateral

attack as untimely is not enough to support a certificate of appealability." *Owens v. Boyd,* 235

F.3d 356, 358 (7th Cir. 2000) (collecting cases); *see also West v. Schneiter,* 485 F.3d 393, 395

(7th Cir. 2007) ("questions of statutory interpretation, such as whether the petition was timely,

do not qualify for a certificate, because they do not concern the Constitution"). Also, because

jurists of reason would not debate or disagree with the Court's conclusion that there is no clearly established Supreme Court precedent supporting Hendrix's habeas claim, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Petitioner's petition for a writ of habeas corpus. The Court further declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** April 11, 2013

          **ENTERED**

          _____

          **AMY J. ST. EVE**
          **United States District Court Judge**